IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CR-479-D
No. 5:24-CV-343-D

| | | |
|---|---|---|
| EMILIO R. MORAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On June 20, 2024, Emilio R. Moran ("Moran" or "petitioner") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 420-month sentence for sexual abuse of a minor and enticement of a minor [D.E. 95] and filed a supporting memorandum [D.E. 96]. On May 18, 2026, the United States moved to dismiss Moran's section 2255 petition for failure to state a claim upon which relief can be granted [D.E. 100] and filed a supporting memorandum [D.E. 101]. See Fed. R. Civ. P. 12(b)(6). That same day, the court notified Moran of the deadline to respond [D.E. 102]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On June 5, 2026, Moran responded in opposition [D.E. 103]. As explained below, the court grants the United States' motion to dismiss, dismisses Moran's section 2255 petition, and denies a certificate of appealability.

I.

On December 5, 2019, a federal grand jury in the Eastern District of North Carolina indicted Moran and charged him with production of child pornography, sexual abuse of a minor, enticement of a minor, transfer of obscene material to a minor, three counts of tampering with a

witness, and destruction, alteration, or falsification of records in a federal investigation. See [D.E. 1]. The grand jury charged Moran under the Military Extraterritorial Jurisdiction Act ("MEJA"), 18 U.S.C. §§ 3261–3267. See id.

On August 17, 2020, with a written plea agreement, Moran pleaded guilty to sexual abuse of a minor (count two) and enticement of a minor (count three). See [D.E. 40, 43]; Rule 11 Transcript ("Rule 11 Tr.") [D.E. 90]; Sentencing Transcript ("Sent. Tr.") [D.E. 84]. At the Rule 11 hearing, Moran and the court engaged in a comprehensive Rule 11 colloquy. See Rule 11 Tr. The court confirmed Moran's competency and that he negotiated a plea agreement with the United States. See id. at 13–14. The court also confirmed that Moran was "fully and completely satisfied with his . . . lawyer's legal services." Id. at 11–12. The court explained Moran's constitutional rights, and Moran confirmed that he understood his constitutional rights. See id. at 3–5, 13–14. The court summarized the charges and the potential penalties. See id. at 14–21. Moran confirmed that he understood both. See id. at 18–21.

The court discussed Moran's decision to plead guilty, and Moran confirmed that he understood the consequences of pleading guilty. See id. at 5–7, 22. The court explained Moran's trial rights and told Moran he had "an absolute right to plead not guilty to all charges against" him. Id. at 21. Moran confirmed that he understood. See id. at 21–22.

The court then discussed the sentencing process. The court explained that at the sentencing hearing it would resolve any objections to the Presentence Investigation Report ("PSR") and any motions before calculating an advisory guideline range. See id. at 22. The court would then consider defense counsel's arguments, Moran's allocution, any victim allocution, and the United States' arguments. See id. The court also explained that if Moran pleaded guilty, the court would "have the authority to impose the maximum penalty authorized by law." Id. at 25.

The court discussed any estimated advisory guideline ranges or estimated sentences that Moran may have received from his counsel or anyone else. Id. at 22–23. The court advised Moran that "even if [his] lawyer or anyone else has given [Moran] his best estimate of what he thinks the advisory guideline range will be, whether he thinks there will be a departure [or] variance motion, whether he thinks [the court will] grant or deny such a departure [or] variance motion, or any prediction from [his] lawyer or anyone else as to [Moran's] actual sentence, any prediction from anyone on any sentencing topic is not binding on the [c]ourt." Id. Moran confirmed that he understood these facts. See id. at 23. Moran also confirmed that he understood that an incorrect prediction about any sentencing topic "would not provide a basis for [Moran] to withdraw [his] guilty plea." Id. at 23.

Moran confirmed that he was not threatened or forced to plead guilty, and no one promised him anything if he pleaded guilty. See id. The court reviewed the plea agreement with Moran. Moran confirmed that he had discussed the plea agreement with his lawyer before signing it, he understood the plea agreement, and the plea agreement contained the entire agreement between the parties. See id. at 23–24. The court then reviewed the plea agreement's waiver of certain appellate and post-conviction rights. See id. at 24–25. Moran confirmed that he understood that the plea agreement waived his right to appeal or contest his conviction or sentence, "including any proceeding under [section] 2255, except[] an appeal [or] motion based upon grounds[] [of] ineffective assistance of counsel or prosecutorial misconduct not known to [Moran] at the time of [his] guilty plea." Id. at 24; [D.E. 40] 1.

The court read the charges in the sexual abuse of a minor count (count two) and the enticement of a minor count (count three), and Moran pleaded guilty to these charges. See Rule 11 Tr. 27–28. The United States offered a factual basis for the guilty plea. See id. at 28–35. The

court then accepted Moran's guilty plea and adjudged him guilty of committing count two and count three. See id. at 35–36.

On November 2, 2020, probation filed the draft PSR. See [D.E. 46]. On November 16, 2020, Moran objected to the draft PSR. See [D.E. 49].

On December 28, 2020, Moran sent a letter to the court and raised concerns about his lawyer. See [D.E. 53]. Moran said that his lawyer "told [Moran] that there are sentencing [guidelines] that [the court] would have to go by." Id. at 2. Moran alleged that if he had known that the guidelines did not bind the court, Moran would not have pleaded guilty. See id.

On February 8, 2021, Moran retained a different lawyer. See [D.E. 56]. On February 9, 2021, the court granted Moran's first lawyer's motion to withdraw. See [D.E. 59]. On June 4, 2021, through Moran's new lawyer, Moran objected to the PSR. See [D.E. 62]. On June 25, 2021, probation filed the PSR. See [D.E. 67]. On July 30, 2021, Moran moved for a downward variance. See [D.E. 72].

On August 4, 2021, the court held Moran's sentencing hearing. See Sent. Tr.; [D.E. 75]. The court confirmed that Moran was competent and had discussed the PSR with his lawyer. See Sent. Tr. 3–5. The court discussed Moran's objections to the PSR. After listening to both parties' arguments, the court overruled Moran's objections to the PSR and explained its findings. See id. at 5–13. The court then calculated Moran's advisory guideline range to be life imprisonment. See id. at 13.

The court heard arguments about the 18 U.S.C. § 3553(a) factors from the United States and Moran. See id. at 14–22, 30–35, 37–39. The court also heard Moran allocute and the victim allocute. See id. at 22–30. After considering all relevant factors under section 3553(a), the

arguments of counsel, Moran's allocution, and the victim's allocution, the court granted Moran's motion for a downward variance and sentenced Moran to 420 months' imprisonment on count three and 180 months' concurrent imprisonment on count two. See id. at 39–44.

On August 11, 2021, Moran appealed. See [D.E. 78]. On appeal, Moran argued that (1) "[t]he United States did not have jurisdiction to prosecute Moran" under the MEJA; (2) this court "made prejudicial errors in calculating Moran's sentencing guideline range;" (3) this court "erred by failing to consider Moran's arguments in support of a shorter sentence;" and (4) Moran's "sentence [was] unreasonably harsh in light of [a] powerful mitigation argument." Opening Br., United States v. Moran, No. 21-4411, (4th Cir. Mar. 18, 2022), [D.E. 30]. On June 21, 2023, the United States Court of Appeals for the Fourth Circuit affirmed Moran's conviction, enforced the appellate waiver in Moran's plea agreement, and dismissed Moran's appeal. See United States v. Moran, 70 F.4th 797 (4th Cir. 2023). On July 13, 2023, the Fourth Circuit issued its mandate. See [D.E. 94].

On June 20, 2024, Moran moved pro se under section 2255 to vacate, set aside, or correct his sentence. See [D.E. 95]. Moran alleges that his lawyer rendered ineffective assistance by (1) not seeking "a more favorable plea offer," (2) not informing Moran about the consequences of pleading guilty versus not guilty, (3) not explaining alternatives to pleading guilty, (4) not explaining critical aspects of the case to Moran, (5) causing Moran to enter an unknowing and involuntary guilty plea, (6) not investigating and challenging the United States' decision to charge Moran under the MEJA, and (7) not challenging the court's subject-matter jurisdiction. See id. at 4, 6–15. Moran also argues that his guilty plea was not knowing and voluntary. See id. at 4, 8–9. On May 18, 2026, the United States moved to dismiss Moran's section 2255 petition. See [D.E. 100]. On June 5, 2026, Moran responded in opposition. See [D.E. 103].

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United

States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Moran must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether

an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).

"Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 369. "Judges instead should look to the contemporaneous evidence to substantiate a defendant's expresses preferences." Id.

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

"[I]f a defendant alleges that he has accepted a government plea offer based on the erroneous advice of counsel, but entered that plea only after the misadvice was corrected by the trial court at the Rule 11 hearing, then he will not be able to show the necessary causal link between counsel's error and his decision to plead guilty." United States v. Mayhew, 995 F.3d 171, 179–80 (4th Cir. 2021) (cleaned up); see United States v. Yelizarov, 140 F.4th 597, 604–05 (4th Cir. 2025), cert. denied, 146 S. Ct. 345 (2025); United States v. Akande, 956 F.3d 257, 262–63 (4th Cir. 2020); United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). "Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11

plea colloquy." Yelizarov, 140 F.4th at 605; see Blackledge, 431 U.S. 74–75; United States v. Lemaster, 403 F.3d 216, 219–22 (4th Cir. 2005).

III.

A.

Moran alleges deficient performance because his lawyer did not "seek . . . . a more favorable plea" agreement. [D.E. 96] 6. Moran's counsel, however, acted reasonably by negotiating a plea agreement in which Moran agreed to plead guilty to sexual abuse of a minor and enticement of a minor in exchange for the United States dismissing the counts for production of child pornography, transfer of obscene material to a minor, tampering with a witness, and destruction, alteration, or falsification of records in a federal investigation. See [D.E. 43] ¶¶ 2a, 3. The United States also agreed that an "upward adjustment of [two] levels for the minor being in the custody, care, or supervisory control of [Moran] is not warranted" and a "downward adjustment of [three] levels for acceptance of responsibility is warranted." Id. at ¶ 5.

Moran does not identify a more favorable plea agreement he would have accepted. A lawyer failing "to secure a [better] plea cannot itself establish deficient performance under Strickland." United States v. Flood, 188 F.4th 250, 262 (4th Cir. 2026). "That is akin to arguing that counsel was deficient for failing to win at trial." Id. "Effective lawyers fail to achieve their clients' desired outcomes all the time." Id. "The Sixth Amendment guarantees competent representation, not favorable results." Id. Without identifying a more favorable plea agreement, Moran's allegation is conclusory, which is insufficient to plausibly allege deficient performance. See id. at 262–63; Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), abrogated on other

grounds by Gray v. Netherland, 518 U.S. 152 (1996). Thus, Moran fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91; Flood, 188 F.4th at 262–63.

Moran also argues that his lawyer violated his "right to accept a more favorable plea offer." [D.E. 96] 6. But there is no right to a plea agreement. See Lafler, 566 U.S. at 168; Frye, 566 U.S. at 148; Weatherford v. Bursey, 429 U.S. 545, 561 (1977); Flood, 188 F.4th at 259; Rodriguez v. Bush, 842 F.3d 343, 347 (4th Cir. 2016).

Alternatively, Moran has failed to plausibly allege prejudice. Prejudice in the plea-bargaining context requires a defendant to show that but-for counsel's allegedly deficient performance, "there is a reasonable probability that the plea offer would have been presented to the court, . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 566 U.S. at 164; see Frye, 566 U.S. at 147; Flood, 188 F.4th at 263. Moran does not plausibly allege that "the government was willing to make" a more favorable plea agreement. Flood, 188 F.4th at 263. Moran also does not plausibly allege that the court would have accepted a more favorable plea agreement. See id. at 260. Thus, Moran fails to plausibly allege prejudice. See Strickland, 466 U.S. at 687–96; Flood, 188 F.4th at 260–64.

B.

Moran alleges deficient performance because his lawyer did not inform Moran about the consequences of pleading guilty versus pleading not guilty. See [D.E. 96] 6–14. At bottom, Moran argues that his lawyer predicted that he would receive a shorter sentence than the sentence he received, and his lawyer did not explain that the court could sentence Moran to 420 months' imprisonment. See id.

The court already described Moran's Rule 11 hearing at length. During the Rule 11 hearing, Moran swore that he understood "all the possible consequences of pleading guilty." Rule 11 Tr. 21. Notably, the court told Moran that the enticement of a minor charge in count three had a penalty of "not less than ten years and no more than life imprisonment" and that the maximum penalty on count two was 180 months' imprisonment. Id. at 19–20. Moran also swore that he understood each maximum penalty. Id. at 20, 25. Moreover, the court explained to Moran that if Moran pleaded guilty, the court could sentence Moran to the "maximum penalty authorized by law for each count." Id. at 25. Again, Moran swore that he understood. See id. Moran also confirmed under oath that he "signed [the] plea agreement in this case." Id. at 23. Moran also swore that he understood "each term in [the] plea agreement," and he read and reviewed the plea agreement with his lawyer before signing it. Id. at 24. The plea agreement details Moran's sentencing exposure of life imprisonment and contains no recommended sentence. See [D.E. 40] 3–6. Moran confirmed that he understood. See Rule 11 Tr. 13–14.

The court explained to Moran that "even if your lawyer . . . has given you his best estimate of what he thinks the advisory guideline range will be, whether he thinks there will be a departure [or] variance motion, whether he thinks [the court will] grant or deny such a departure [or] variance motion, or any prediction from your lawyer . . . as to your actual sentence, any sentencing prediction from anyone on any sentencing topic is not binding on the [c]ourt." Id. at 22–23. Moran swore that he understood. See id. at 23.

Moran's sworn statements at his Rule 11 hearing bind him. See, e.g., Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 605; United States v. Moussaoui, 591 F.3d 263, 295–99 (4th Cir. 2010); Lemaster, 403 F.3d at 221–23. Thus, the court cured any deficiency from Moran's lawyer during the Rule 11 hearing, and Moran's claim fails. Yelizarov, 140 F.4th at 604–05; Mayhew,

995 F.3d at 179–80; Lemaster, 403 F.3d at 221–23; Akande, 956 F.3d at 262–63; Foster, 68 F.3d at 88.

In opposition, Moran argues that his Rule 11 statements do not bind him because the "strong presumption of" veracity of Rule 11 statements is "not absolute." [D.E. 103] 2; cf. Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 605; Moussaoui, 591 F.3d at 295–99; Lemaster, 403 F.3d at 221–22. Moran, however, does not cite any evidence that undermines the veracity of his Rule 11 statements. Thus, the court rejects Moran's argument.

Alternatively, Moran alleges that if his lawyer properly informed him about his potential sentencing exposure, Moran would have sought a more favorable plea agreement or proceeded to trial. See [D.E. 96] 8, 10, 12–13. Moran, however, fails to plausibly allege that the United States would have offered a more favorable plea agreement that Moran would have accepted, the United States would have presented such a plea agreement to the court, the court would have accepted such a plea agreement, and such a plea agreement would have led to a lower sentence. See Lafler, 566 U.S. at 164; Frye, 566 U.S. at 147; Flood, 188 F.4th at 263. Moreover, Moran fails to plausibly allege that it would have been rational for him to proceed to trial, particularly in light of the overwhelming evidence against him. See Lee, 582 U.S. at 364–65; Padilla, 559 U.S. at 372; Hill, 474 U.S. at 58–59; Fugit, 703 F.3d at 260; PSR ¶¶ 11–23. Thus, Moran fails to plausibly allege prejudice. See Strickland, 466 U.S. at 687–96; Flood, 188 F.4th at 260–64.

C.

Moran alleges deficient performance because his lawyer did not explain to Moran the alternatives to accepting the plea agreement and pleading guilty, such as pleading not guilty or seeking a different plea agreement. See [D.E. 96] 10–11. As for pleading not guilty, at Moran's

Rule 11 hearing, the court explained to Moran his right to plead not guilty to all charges, to have a trial, and the trial rights he would have if he pleaded not guilty. See Rule 11 Tr. 3–5. The court also explained to Moran that if he pleaded guilty, he would waive his right to a trial and his trial rights. See id. at 21–22. Moran confirmed that he understood. See id. Before Moran pleaded guilty, the court told Moran that "at this very moment, if you want to plead not guilty to all the charges against you, you can." Id. at 26. Moran confirmed that he understood. See id. After Moran confirmed that he understood that he could plead not guilty to all charges, Moran pleaded guilty to count two and to count three. See id. at 27–28.

Moran's sworn statements at his Rule 11 hearing bind Moran. See, e.g., Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 605; Moussaoui, 591 F.3d at 295–99; Lemaster, 403 F.3d at 221–23. Thus, even if Moran's lawyer did not explain to Moran that he could plead not guilty, the court cured any deficiency at the Rule 11 hearing. See Yelizarov, 140 F.4th at 604–05; Mayhew, 995 F.3d at 179–80; Akande, 956 F.3d at 262–63; Foster, 68 F.3d at 88.

As for Moran's claim that his lawyer performed deficiently by failing to seek a different plea agreement, Moran fails to plausibly allege that the United States offered or was willing to offer Moran a different plea agreement. As such, Moran's lawyer's performance was not deficient for failing to explain to Moran a non-existent alternative plea agreement. See, e.g., Guerrero v. United States, 383 F.3d 409, 419 (6th Cir. 2004); Hammond v. United States, No. MJM-16-562, 2026 WL 2943266, at *3 (D. Md. Sept. 30, 2026) (unpublished); Korzun v. United States, No. 1:18-CR-55, 2022 WL 1256699, at *4 (N.D. W. Va. Apr. 1, 2022) (unpublished), report and recommendation adopted, 2022 WL 1250389 (N.D. W. Va. Apr. 27, 2022) (unpublished); Bautista v. United States, No. 6:03-CR-10, 2008 WL 616098, at *2 (M.D. Fla. Mar. 3, 2008) (unpublished).

Thus, Moran fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91; Flood, 188 F.4th at 263.

Alternatively, Moran fails to plausibly allege that it would have been rational for him to plead not guilty and proceed to trial. See Lee, 582 U.S. at 364–65; Padilla, 559 U.S. at 372; Hill, 474 U.S. at 58–59; Fugit, 703 F.3d at 260. Likewise, Moran fails to plausibly allege that the United States would have offered a different plea agreement that Moran would have accepted, that the United States would have presented the plea agreement to the court, the court would have accepted the plea agreement, and that the plea agreement would have led to a lesser charge or sentence. See Lafler, 566 U.S. at 164; Frye, 566 U.S. at 147; Flood, 188 F.4th at 263. Thus, Moran fails to plausibly allege prejudice. See Strickland, 466 U.S. at 687–96.

D.

Moran alleges deficient performance because his lawyer failed to explain his likely sentencing exposure. See [D.E. 96] 9. Moran also alleges deficient performance because his lawyer did not show Moran discovery and did not "address[] the issues for a defense relating to any evidence, testimony, and other evidence that was going to be used at trial or a guilty plea for enhancements." Id. at 11.

As for Moran's allegation that his lawyer did not explain to Moran his likely "sentencing exposure," at Moran's Rule 11 hearing, Moran swore that he had spoken with his lawyer about the sentencing process. See Rule 11 Tr. 22. Moreover, during the Rule 11 hearing, Moran swore that he had read and discussed his entire plea agreement with his lawyer before he signed it, and the plea agreement describes Moran's sentencing exposure, does not contain a recommended sentence, and states that the court has the authority to impose a life sentence. See id. at 23–25; [D.E. 40] 3–

6. At Moran's sentencing hearing, Moran also swore that he had spoken with his lawyer about the PSR. See Sent. Tr. 5.

Moran's sworn statements at his Rule 11 hearing and sentencing hearing bind Moran and defeat his argument that his lawyer did not explain Moran's likely sentencing exposure. See, e.g., Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 605; Moussaoui, 591 F.3d at 295–99; Lemaster, 403 F.3d at 221–23. Thus, Moran's claim fails.

As for Moran's allegation that his lawyer did not discuss discovery with him, Moran does not allege what discovery his lawyer failed to discuss with him. Moran's conclusory allegation that his lawyer did not discuss discovery with Moran fails to plausibly allege deficient performance. Moran does not "identify the acts or omissions of counsel that are alleged not to have been the result of professional judgment." Strickland, 466 U.S. at 690. Thus, Moran fails to plausibly allege deficient performance. See id. at 687–91.

Alternatively, as discussed, the court explained Moran's likely sentencing exposure to Moran at his Rule 11 hearing, and Moran swore that he understood his sentencing exposure. Moreover, Moran does not plausibly allege that if his lawyer discussed Moran's likely sentencing exposure or the evidence with Moran, the outcome of the case would have been different. See Harrington, 562 U.S. at 111; Strickland, 466 U.S. at 696. Moran also fails to plausibly allege that it would have been rational for him to proceed to trial, particularly in light of the overwhelming evidence against him. See Lee, 582 U.S. at 364–65; Padilla, 559 U.S. at 372; Hill, 474 U.S. at 58–59; Fugit, 703 F.3d at 260; PSR ¶¶ 11–23. Thus, Moran fails to plausibly allege prejudice. See Strickland, 466 U.S. at 687–97.

E.

Moran alleges deficient performance because his lawyer caused Moran to enter an unknowing and involuntary guilty plea. See [D.E. 96] 8–9. The court disagrees. Moran's sworn statements at his Rule 11 hearing conclusively establish that he knowingly and voluntarily pleaded guilty. See Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 604–05; Moussaoui, 591 F.3d at 295–99; Lemaster, 403 F.3d at 222. Thus, Moran has not plausibly alleged deficient performance. See Strickland, 466 U.S. at 687–91.

F.

Moran contends that his guilty plea was not knowing and voluntary. See [D.E. 96] 8. A criminal defendant's decision to plead guilty must be knowing and voluntary. See, e.g., Boykin v. Alabama, 395 U.S. 238, 242–43 (1969); McCarthy v. United States, 394 U.S. 459, 466 (1969); Walton v. Angelone, 321 F.3d 442, 462–63 (4th Cir. 2003).

Moran procedurally defaulted this claim by failing to raise it on direct appeal. Cf. Opening Br., United States v. Moran, No. 21-4411 (4th Cir. Mar. 18, 2022), [D.E. 30]. Section 2255 "imposes tight procedural constraints" on the scope of a movant's claims. Fernandez v. United States, 608 U.S. 411, 419 (2026). "[C]laims not raised on direct review are procedurally defaulted unless the prisoner can demonstrate cause and prejudice, or else actual innocence." Id. (cleaned up); see Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621–22 (1998); Fugit, 703 F.3d at 253; United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Moran has not plausibly alleged cause and prejudice or actual innocence to excuse his failure to raise this claim on direct appeal. Thus, Moran's claim fails.

G.

Moran alleges deficient performance because his lawyer did not challenge or investigate the United States' decision to charge Moran under the MEJA. See [D.E. 96] 14. Under the MEJA, "[w]hoever engages in conduct outside the United States that would constitute an offense punishable by imprisonment for more than [one] year if the conduct had been engaged in within the special maritime and territorial jurisdiction of the United States . . . while employed by or accompanying the Armed Forces outside the United States . . . shall be punished as provided for that offense." 18 U.S.C. § 3261(a). According to Moran, the United States' "theory was that Moran was employed by the Armed Forces because he worked for a Department of Veterans Affairs subcontractor or . . . he was accompanying his wife who worked on the Kadena Air Base in Japan." [D.E. 96] 14–15 (cleaned up). Moran alleges that his lawyer performed deficiently by "failing to challenge" the United States' theories establishing the MEJA's jurisdictional element. Id. at 15.

On appeal, Moran argued that this court lacked subject-matter jurisdiction to hear the charges the United States brought against Moran. See Opening Br., United States v. Moran, No. 21-4411, (4th Cir. Mar. 18, 2022), [D.E. 30] 11–27. Specifically, Moran argued that this court lacked subject-matter jurisdiction because "Moran was neither employed by nor accompanying the armed forces . . . during the period covered by the indictment." Id. at 27. The Fourth Circuit rejected Moran's argument and explained that Moran "conflate[d] 'subject-matter jurisdiction' with a 'jurisdictional element' of his offense." Moran, 70 F.4th at 802. Subject-matter jurisdiction is the "the court's authority to hear a given type of case." United States v. Morton, 467 U.S. 822, 828 (1984); see Moran, 70 F.4th at 802. "An offense's jurisdictional element goes to a different issue: the power of Congress to regulate the conduct at issue, not the jurisdiction of the court to

hear a particular case." Moran, 70 F.4th at 802; see United States v. Carr, 271 F.3d 172, 178 (4th Cir. 2001). Whether the armed forces employed Moran or Moran accompanied the armed forces were "jurisdictional elements" of the offenses. See Moran, 70 F.4th at 803. The Fourth Circuit held that this court had subject-matter jurisdiction under 18 U.S.C. § 3231 over the charges against Moran. See id. at 802–03. The Fourth Circuit also held that whether the armed forces employed Moran or Moran accompanied the armed forces did not affect subject-matter jurisdiction under 18 U.S.C. § 3231. See id. at 803. Thus, "[a]ny argument about whether Moran was accompanying or employed by the military . . . f[ell] within the scope of the appeal waiver as a challenge to [Moran's] conviction and must be dismissed." Id. at 804.

Alternatively, to the extent that Moran alleges the armed forces did not employ Moran or Moran did not accompany the armed forces, Moran raised this claim on direct appeal and lost. Moran cannot use section 2255 to relitigate a claim that he lost on direct appeal. See Fernandez, 608 U.S. at 419; Bousley, 523 U.S. at 621–22; Dyess, 730 F.3d at 360; United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam). Thus, Moran's claim fails.

As for Moran's allegation that his lawyer performed deficiently by not arguing that the armed forces did not employ Moran or Moran did not accompany the armed forces, the court rejects Moran's argument. Under the MEJA, civilian employees, contractors, subcontractors, employees of contractors, and employees of subcontractors of the Department of War or "any other Federal agency . . . to the extent such employment relates to supporting the mission of the Department of [War]" are "employed by the Armed Forces outside the United States." 18 U.S.C. § 3267; cf. United States v. Brehm, 691 F.3d 547, 550 (4th Cir. 2012). Moran "worked for a Department of Veterans Affairs subcontractor." Moran, 70 F.4th at 799. Moran's employment

related to the Department of War's mission. See id. (Moran "was placed at the Veteran's Affairs Transition Assistance Program at Kadena Air Base in Okinawa, Japan."). Failing to raise a meritless claim is not ineffective assistance. See Knowles v. Mirzayance, 556 U.S. 111, 124–25 (2009); Clanton v. Bair, 826 F.2d 1354, 1359 (4th Cir. 1987). Thus, Moran fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

Moran also alleges that his lawyer should have more thoroughly investigated the MEJA. "[A]lthough counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Dyess, 730 F.3d at 362; see Green v. French, 143 F.3d 865, 892 (4th Cir. 1998), overruled on other grounds by Williams v. Taylor, 529 U.S. 362 (2000). To plausibly allege a claim that counsel failed to conduct an adequate investigation, Moran must identify what an adequate investigation would have revealed. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996).

Moran fails to plausibly allege what a more "thorough" investigation of the MEJA would have revealed. See [D.E. 96] 14–15; Beaver, 93 F.3d at 1195. Thus, Moran has not plausibly alleged deficient performance. See Strickland, 466 U.S. at 687–91.

H.

Moran alleges deficient performance because his lawyer failed to challenge the court's subject-matter jurisdiction. To the extent Moran alleges that the court did not have subject-matter jurisdiction to hear the charges brought against him, Moran raised this claim on direct appeal and lost. See Moran, 70 F.4th at 802–04. Moran cannot use section 2255 to relitigate a claim that he

lost on direct appeal. See Fernandez, 608 U.S. at 419; Bousley, 523 U.S. at 621–22; Dyess, 730 F.3d at 360; Linder, 552 F.3d at 396; Boeckenhaupt, 537 F.2d at 1183. Thus, Moran's claim fails.

Alternatively Moran's lawyer was not ineffective for failing to raise a meritless argument. See Knowles, 556 U.S. at 124–25; Clanton, 826 F.2d at 1359. Thus, Moran fails to plausibly allege deficient performance. See Strickland, 466 U.S. at 687–91.

Finally, Moran also asks the court to hold an evidentiary hearing. See [D.E. 96] 16. Section 2255 requires the court to "grant a prompt hearing" "[u]nless the motion and the files and records of the case conclusively show that a prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see Flood, 188 F.4th at 257–58; United States v. Hashimi, 110 F.4th 621, 627 (4th Cir. 2024). After reviewing the motion and files and records in the case, the court finds that the record conclusively shows that Moran is not entitled to relief. See Flood, 188 F.4th at 257–58. Thus, the court denies Moran's request for an evidentiary hearing.

The court finds that reasonable jurists would not find the court's treatment of Moran's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Thus, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 100], DISMISSES petitioner's section 2255 petition [D.E. 95], and DENIES a certificate of appealability.

**SO ORDERED.** This 16 day of November, 2026.

JAMES C. DEVER III
United States District Judge